1          UNITED STATES DISTRICT COURT
           EASTERN DISTRICT OF NEW YORK
2

3    ------------------------------X
                                   :
4    UNITED STATES OF AMERICA,     :
                                   :   15-CR-00137 (JBW)
5              v.                  :
                                   :   November 10, 2015
6    ERIC LUSTIG,                  :   Brooklyn, New York
                                   :
7                   Defendant.     :
                                   :
8    ------------------------------X

9
          TRANSCRIPT OF CRIMINAL CAUSE FOR PLEADING
10          BEFORE THE HONORABLE VERA M. SCANLON
               UNITED STATES MAGISTRATE JUDGE
11

12   APPEARANCES:

13

14   For the Government:        UNITED STATES ATTORNEY
                                BY:  DAVID KESSLER, ESQ.
15                              ASSISTANT U.S. ATTORNEY

16

17   For the Defendant:         MILDRED WHALEN, ESQ.
                                Federal Defenders of New York, Inc.
                                One Pierrepont Plaza, 16th Floor
18                              Brooklyn, New York 11201

19

20

21

22

23   Court Transcriber:         MARY GRECO
                                TypeWrite Word Processing Service
                                211 N. Milton Road
24                              Saratoga Springs, New York 12866

25

     Proceedings recorded by electronic sound recording,
     transcript produced by transcription service

2

I N D E X

Defendant Sworn at Page 5

<u>EXHIBITS</u>                                    <u>Marked</u>   <u>Received</u>

1    Plea Agreement                              --        21

3

1   (Proceedings began at 12:03 p.m.)

2            THE CLERK:  Criminal Cause for Change of Plea, case

3   number 15-CR-137 United States v. Eric Lustig.  Counsel, please

4   state your name for the record.

5            MR. KESSLER:  Good afternoon, Your Honor.  David

6   Kessler for the United States.

7            THE COURT:  Good afternoon.

8            MS. WHALEN:  Good afternoon, Your Honor.  The Federal

9   Defenders of New York by Mildred Whalen and I'm joined here at

10   table with Mr. Lustig.

11            THE COURT:  Good afternoon.  So just so that we're

12   literally all on the same page, in terms of paperwork for

13   today, I have the docket, I have the element sheet, I have a

14   copy of the indictment, I have the Plea Agreement, and I also

15   have the consent to have a plea taken before a magistrate

16   judge.  Is there any other paperwork I should have or --

17            MR. KESSLER:  No.

18            THE COURT:  Do you all have all of that paperwork?

19            MS. WHALEN:  We do.  Thank you.

20            THE COURT:  For the Government, are there victims to

21   the offense and if so, have you notified them of today's

22   proceeding?

23            MR. KESSLER:  Your Honor, my conversations with the

24   FBI agent in charge of this case have led me to understand that

25   there are no identifiable victims at this point.  That doesn't

4

1   mean one will not be identified at some point.  If we identify

2   one, we will notify them.  But at this point I'm not aware of

3   any.

4              THE COURT:  Okay.  I'm just going to ask Krista, can

5   we turn the volume up on the microphones?

6              THE CLERK:  Is there a green light on yours?  Okay.

7   Yes.

8              THE COURT:  It might be me, but just --

9                      [Pause in proceedings.]

10             MR. KESSLER:  Is this better?

11             THE COURT:  That's much better.

12             THE CLERK:  Can you bring it closer?

13             MR. KESSLER:  There we go.

14             THE COURT:  Was it not on?

15             MR. KESSLER:  It was on.

16             THE COURT:  Okay.

17             MR. KESSLER:  Just to restate that, my understanding

18  from the case agents at this point in time that there are no

19  identifiable victims so none have been notified.  To the extent

20  the Government identifies any victims, we will keep them

21  apprised of future proceedings.

22             THE COURT:  Okay.  Thank you.

23             So Mr. Lustig, we're here for what I'm told a guilty

24  plea.  There's a multi-step process here, so it's going to take

25  a little while, but let's start with me introducing myself.  I'm

5

1  Vera Scanlon.  I'm a magistrate judge in this case.  We're

2  going to start with me asking the deputy to swear you in.

3       THE DEPUTY:  Can you stand and raise your right hand?

4  (AT THIS TIME THE DEFENDANT, ERIC LUSTIG, WAS SWORN.)

5       THE DEPUTY:  Okay.  Thank you.  You can have a seat.

6       THE COURT:  Thanks.  So as I hope you -- exactly.  If

7  you don't mind using the microphone, it's easier for me to hear

8  and easier for us to get a recording.

9       So as you may know, this case is assigned to a

10  district judge.  It's is Judge Weinstein.  He's the judge

11  who'll make the ultimate decision as to whether to accept your

12  guilty plea, and if he does, to sentence you.  You have the

13  absolute right to have the district judge, Judge Weinstein,

14  listen to your plea without any prejudice to you.  Do you

15  understand?

16       THE DEFENDANT:  Yes.

17       THE COURT:  So our plan is that a transcript of

18  today's proceeding will be prepared by a court reporter from

19  the recording of today's proceeding.  That's why I was asking

20  everyone to use the microphone so that we get as clear a

21  recording as possible.  And that transcript will be provided to

22  the district judge, Judge Weinstein.  Judge Weinstein will

23  review the transcript of today's proceeding in connection with

24  deciding whether to accept your plea, and if he does, with your

25  sentence.  Do you understand the process?

6

```
 1              THE DEFENDANT:  Yes.
 2              THE COURT:  Do you wish to give up your right to have
 3   the district judge, Judge Weinstein, listen to your plea and
 4   instead proceed here before me today?
 5              THE DEFENDANT:  Yes.  I want to proceed, yes.
 6              THE COURT:  Have you had an adequate -- have you been
 7   able to discuss this issue of proceeding before me with your
 8   attorney?
 9              THE DEFENDANT:  Yes.
10              THE COURT:  And did you have enough time to do that?
11              THE DEFENDANT:  Yes.
12              THE COURT:  So in connection with that, I have a
13   form, I mentioned earlier, consent to have a plea taken before
14   a United States Magistrate Judge.  Did you review this form
15   with your attorney?
16              THE DEFENDANT:  Yes.
17              THE COURT:  Do you understand it?
18              THE DEFENDANT:  Yes.
19              THE COURT:  Are the statements in it correct?
20              THE DEFENDANT:  Yes.
21              THE COURT:  The first signature on the right-hand
22   side, is that your signature?
23              THE DEFENDANT:  Yes, Eric Lustig.
24              THE COURT:  And below that, Ms. Whalen, is that your
25   signature?
```

7

1          MS. WHALEN:  Yes, it is.

2          THE COURT:  And then for the Government on the left-

3   hand side, Mr. Kessler, is that your signature?

4          MS. WHALEN:  Yes.

5          THE COURT:  So Mr. Lustig, did you agree to proceed

6   before me here today voluntarily and of your own free will?

7          THE DEFENDANT:  Yes.

8          THE COURT:  Has anyone made any threats or promises

9   to you to induce you to agree to have me hear your plea here

10  today?

11         THE DEFENDANT:  No.

12         THE COURT:  Thanks.  So we're going to proceed before

13  me today with this plea proceeding.

14         Mr. Lustig, as I hear your plea I'm going to have to

15  ask you a number of questions to assure myself, and in turn the

16  district judge, that it is in fact a valid plea.  If you don't

17  understand what I'm saying or you don't understand the

18  questions I'm asking, please let me know.  You can either ask

19  your attorney, she'll try to clarify.  If she needs any

20  information from me, she can ask me.  After that conversation

21  if you still need to ask me something directly, you can do

22  that.  Do you understand?

23         THE DEFENDANT:  Yes.

24         THE COURT:  Do you understand that you have the right

25  to be represented by an attorney at trial and at every other

8

1   stage of the proceedings including this one?

2           THE DEFENDANT:  Yes, I do.

3           THE COURT:  And do you understand that if you can't

4   afford an attorney, an attorney will be appointed for you?

5           THE DEFENDANT:  Yes.

6           THE COURT:  And you understand that Ms. Whalen has

7   been appointed to represent you?

8           THE DEFENDANT:  Yeah, I understand.

9           THE COURT:  And do you wish her to be your attorney

10  here today?

11          THE DEFENDANT:  Yes.

12          THE COURT:  I'm just going to remind you a little bit

13  earlier you took an oath to tell the truth.  This means as we

14  go through the questions that I have to ask you, if you answer

15  any of those questions falsely, those answers may later be used

16  against you in a separate prosecution for the crime of perjury

17  or of making a false statement.  Do you understand?

18          THE DEFENDANT:  Yes.

19          THE COURT:  All right.  So we're going to start with

20  some background information.  What's your full name?

21          THE DEFENDANT:  Eric Lustig.

22          THE COURT:  And how old are you?

23          THE DEFENDANT:  50 years old.

24          THE COURT:  And what's the highest level of education

25  that you completed?

9

1              THE DEFENDANT:  Bachelor of Science.

2              THE COURT:  When did you graduate?

3              THE DEFENDANT:  1986.

4              THE COURT:  What did you study?

5              THE DEFENDANT:  Computer information systems.

6              THE COURT:  Where did you go to school?

7              THE DEFENDANT:  Murphy College.

8              THE COURT:  And a different type of question.  Are

9    you presently or have you recently been under the care of a

10   physician?

11             THE DEFENDANT:  Yes, I am under --

12             MS. WHALEN:  Your Honor, Mr. Lustig suffers from a

13   number of conditions, so I had him get me a list of his

14   medications and I can explain them to you.  He suffers from

15   anxiety, depression, obsessive compulsive disorder,

16   hypothyroidism, high cholesterol, acid reflux disease, and

17   osteoporosis.  To treat those conditions he takes clomipramine,

18   which is for depression and obsessive compulsive disorder;

19   thyroxine which is for hypothyoidism; lovastatin which is for

20   high cholesterol; escitalopram, which is anxiety and

21   depression; omeprazole which is for acid reflux disease; and he

22   takes prescription amounts of Vitamin D and Vitamin D2 for the

23   osteoporosis.

24             THE COURT:  Mr. Lustig, did you hear that list of

25   conditions that Ms. Whalen said that you suffer from?

10

1          THE DEFENDANT:  Yes.

2          THE COURT:  Is that list complete?

3          THE DEFENDANT:  Yes.

4          THE COURT:  And is it correct?

5          THE DEFENDANT:  Yes, it is.

6          THE COURT:  And then she also read a list of

7  medicines that you take.  Did you hear that list?

8          THE DEFENDANT:  Yes, I did.

9          THE COURT:  And is that list correct?

10          THE DEFENDANT:  Yes.

11          THE COURT:  And is it complete?

12          THE DEFENDANT:  Yes.

13          THE COURT:  You mentioned earlier you're under the

14  care of a physician.  How often do you see the various, one or

15  more doctors that you're under their care?

16          THE DEFENDANT:  The psychiatrist usually maybe once

17  every month or two months depending on whatever he recommends.

18  And then also for the other doctors, my primary care physician,

19  I go there maybe like once every two months to get blood tests

20  and to see if they need to change my medication.

21          THE COURT:  Do you see any other doctors on a regular

22  basis?

23          THE DEFENDANT:  Oh, I also go to Queens Counseling

24  for Change in Long Island and Queens.

25          MS. WHALEN:  That center is psychotherapy.  I don't

1   believe that it's medical doctors.  It's just counseling for

2   sexual disorders.

3           THE COURT:  And how often do you go to the center in

4   Queens?

5           THE DEFENDANT:  I tried to go there like every week

6   or so, yes.

7           THE COURT:  Do you see any other doctors on a regular

8   basis or doctors, physicians, social workers, anyone providing

9   --

10          THE DEFENDANT:  I also go to a --

11          THE COURT:  --  mental health care or physical care?

12          THE DEFENDANT:  -- psychotherapist that I go to to

13  talk about like the depression and stuff on my own, and I see

14  her like twice a month.

15          THE COURT:  And in the last month have you seen these

16  doctors on a regular schedule that you just suggested?

17          THE DEFENDANT:  The psychiatrist I have an

18  appointment to see her -- to see him next -- later this month.

19  I missed my appointment last month because of a hearing, a

20  court hearing and I didn't get it rescheduled, and I had a

21  prescription.  He made it only -- that one's for two months.

22  So I'm going to go next week to see him.  And as far as the

23  psychotherapist, I saw her last night.

24          THE COURT:  And how about the medical doctors for the

25  physical conditions?

1          THE DEFENDANT:  The medical doctor, I have enough

2   medicine right now so I have planned to go maybe in December or

3   January.

4          THE COURT:  Okay.  Is there anything about any of

5   those treatments that would interfere with your ability to

6   understand what's going on here today?

7          THE DEFENDANT:  No.

8          THE COURT:  Have you ever been hospitalized or

9   treated for any mental illnesses?

10          THE DEFENDANT:  No.

11          THE COURT:  Have you ever been hospitalized or

12   treated for any addiction to drugs or alcohol?

13          THE DEFENDANT:  No.

14          THE COURT:  In the past 24 hours have you consumed

15   any alcohol?

16          THE DEFENDANT:  No.

17          THE COURT:  In the past 24 hours have you consumed

18   any narcotic drugs?

19          THE DEFENDANT:  No.

20          THE COURT:  In the past 24 hours have you taken

21   medications?

22          THE DEFENDANT:  Yeah, I took my medicines that I have

23   on the list.

24          THE COURT:  Did you take all of them in the required

25   dosage?

13

1          THE DEFENDANT:  Yes.

2          THE COURT:  Have you taken any other medicines

3    besides the ones that were on the list that Ms. Whalen

4    described?

5          THE DEFENDANT:  No.

6          THE COURT:  Is your mind clear as you sit here today?

7          THE DEFENDANT:  Yes.

8          THE COURT:  Do you understand these proceedings?

9          THE DEFENDANT:  Yes.

10         THE COURT:  Ms. Whalen, have you discussed this

11   matter with your client?

12         MS. WHALEN:  Yes, I have, Your Honor.

13         THE COURT:  Do you have any concerns that any of the

14   conditions that you listed and that he confirmed would

15   interfere with his ability to understand what's going on here

16   today?

17         MS. WHALEN:  No, Your Honor.

18         THE COURT:  Or interfere with his ability to make an

19   informed decision about this case?

20         MS. WHALEN:  No, Your Honor.

21         THE COURT:  In your opinion, is he capable of

22   understanding the nature of these proceedings?

23         MS. WHALEN:  Yes, he is.

24         THE COURT:  And in your opinion does he understand

25   the rights that he'll be waiving if he decides to go ahead with

14

1   the guilty plea?

2            MS. WHALEN:  Yes, he does.

3            THE COURT:  Do you have any doubts as to his

4   competence to plead at this time?

5            MS. WHALEN:  No, I don't.

6            THE COURT:  Have you reviewed with him the sentencing

7   guidelines and their applicability in this case?

8            MS. WHALEN:  Yes, I have.

9            THE COURT:  Mr. Lustig, have you had a sufficient

10  opportunity to review your case with your attorney?

11           THE DEFENDANT:  Yes.

12           THE COURT:  And have you had any difficulty

13  communicating with Ms. Whalen?

14           THE DEFENDANT:  No.

15           THE COURT:  Are you fully satisfied with the

16  representation and advice given to you in your case by your

17  attorney, Ms. Whalen?

18           THE DEFENDANT:  Yes.

19           THE COURT:  Have you received a copy of the

20  indictment?

21           THE DEFENDANT:  Yes.

22           THE COURT:  Did you read it?

23           THE DEFENDANT:  Yes.

24           THE COURT:  Do you understand it?

25           THE DEFENDANT:  Yes.

15

1          THE COURT:  Did you review it with your attorney?

2          THE DEFENDANT:  Yes.

3          THE COURT:  Did you have sufficient time to review it

4    with her?

5          THE DEFENDANT:  Absolutely, yes.

6          THE COURT:  So the indictment includes the following

7    counts.  Count 1, receipt of child pornography.  Count 2,

8    possession of child pornography.  It also includes criminal

9    forfeiture allegations.  Ms. Whalen, do you want me to read the

10   charges aloud?

11         MS. WHALEN:  No, Your Honor.  We'll waive the reading

12   of the charges.

13         THE COURT:  Mr. Lustig, I'm going to explain some of

14   your rights in this proceeding and if you were to go to trial.

15         The first and most important thing you should

16   understand is that you don't have to plead guilty even if you

17   are guilty.  Under the American legal system the prosecution

18   has the burden of proving the guilt of a defendant beyond a

19   reasonable doubt.  If the prosecution cannot or does not meet

20   its burden of proof, the jury at trial has the duty to find the

21   defendant not guilty even if the defendant is in fact guilty.

22   Do you understand?

23         THE DEFENDANT:  Yes.

24         THE COURT:  What this means is even if you are

25   guilty, you have a choice.  It's up to you to decide what to

1   do.  It's not your lawyer's choice, or your family's choice, or

2   anyone's choice.  It's solely your decision what to do with

3   regard to any plea.  You may withdraw your previously entered

4   plea of not guilty and plead guilty as I'm told you wish to do,

5   or you may choose to go to trial simply by persisting in your

6   plea of not guilty.  If you do so, you'll make the Government -

7   - meaning continue with your plea of not guilty, you'll make

8   the Government meet its burden of proving your guilt beyond a

9   reasonable doubt.  Do you understand?

10          THE DEFENDANT:  Yes.

11          THE COURT:  So you should know that it sometimes

12  happens in American courtrooms that a jury has returned a

13  verdict of not guilty although everyone else in the courtroom

14  believed the defendant had committed the alleged crime.  What

15  the jury was saying in that instance was not that the defendant

16  wasn't guilty, but rather the prosecution had failed to meet

17  its burden of proving the defendant guilty.  Do you understand

18  that?

19          THE DEFENDANT:  Yes.

20          THE COURT:  So it means that you have a choice.  You

21  can say to the Government prove the case against me, meet your

22  burden of proving my guilt beyond a reasonable doubt.  If you'd

23  like to exercise that right, you would simply say not guilty

24  when I ask you how you plead.

25          If you persist in your plea of not guilty, under the

17

1  constitution and the laws of the United States you're entitled

2  to a speedy and public trial by a jury with the assistance of

3  an attorney on the charges contained in the indictment.  Do you

4  understand?

5          THE DEFENDANT:  Yes.

6          THE COURT:  At trial you would be presumed innocent.

7  You wouldn't have to prove your innocense.  It would be the

8  Government's burden to overcome the presumption of innocence

9  and prove you guilty by competent evidence and beyond a

10  reasonable doubt.  Do you understand?

11          THE DEFENDANT:  Yes.

12          THE COURT:  If the Government did not meet its

13  burden, the jury would have the duty to find you not guilty.

14  Do you understand?

15          THE DEFENDANT:  Yes.

16          THE COURT:  By pleading guilty you would be giving up

17  your right to have the Government satisfy its burden of proving

18  that you are guilty beyond a reasonable doubt.  Instead, you

19  will be admitting your guilt.  Do you understand?

20          THE DEFENDANT:  Yes.

21          THE COURT:  In the course of any trial, the witnesses

22  for the Government would have to come to court and testify in

23  your presence.  Your attorney would have the right to cross

24  examine the witnesses for the Government, to object to

25  evidence offered by the Government, and to offer witnesses and

18

1    other evidence on your behalf.  Do you understand?

2              THE DEFENDANT:  Yes.

3              THE COURT:  Your attorney would also have the right

4    to subpoena or compel witnesses to come to court and testify.

5    Do you understand?

6              THE DEFENDANT:  Yes.

7              THE COURT:  By pleading guilty and if I recommend

8    that the district judge accept your plea, and that is what the

9    judge does, you're giving up your right to confront the

10   witnesses who would testify against you at trial, you're giving

11   up your right to offer evidence on your own behalf, to compel

12   witnesses to come to court and testify and to raise any

13   defenses you may have.  Do you understand?

14             THE DEFENDANT:  Yes.

15             THE COURT:  At a trial, you would have the right to

16   testify on your own behalf but you cannot be compelled to do

17   so.  Under the constitution of the United States a defendant in

18   a criminal case cannot be forced to take the witness stand at

19   his own trial and say anything that could be used against him

20   to show that he is guilty of the crime with which he is

21   charged.  So if you decided not to testify, the court would

22   instruct the jury that it could not hold that against you.

23   This is called your right against self-incrimination.  Do you

24   understand?

25             THE DEFENDANT:  Yes.

19

1          THE COURT:  You understand you would also have the

2    right to testify if you chose to do so?  Do you understand

3    that?

4          THE DEFENDANT:  Yes.

5          THE COURT:  By pleading guilty you're admitting your

6    guilt and giving up your right against self-incrimination.  Do

7    you understand?

8          THE DEFENDANT:  Yes.

9          THE COURT:  If you plead guilty, I'm going to have to

10   ask you questions about what you did in order to satisfy myself

11   and in turn the district judge that you are in fact guilty of

12   the charge or charges to which you are pleading guilty and you

13   will then have to answer my questions truthfully and

14   acknowledge your guilt and you're going to have to do that

15   subject to the oath that you took earlier to tell the truth.

16   Do you understand?

17         THE DEFENDANT:  Yes.

18         THE COURT:  It's not going to be simply enough for

19   you to say you are guilty.  You're going to have to tell me

20   what it is that you did that makes you guilty of the charge to

21   which you are pleading guilty.  Do you understand?

22         THE DEFENDANT:  Yes.

23         THE COURT:  If you do plead guilty and I recommend

24   that the district judge accept your plea, and that's what he

25   does, you will be giving up your constitutional rights to a

20

1   trial and all the other rights I have just discussed.  There's

2   not going to be any further trial of any kind.  If the district

3   judge accepts your plea, he will simply enter a judgment of

4   guilty on the basis of your guilty plea.  Do you understand?

5           THE DEFENDANT:  Yes.

6           THE COURT:  If after you are sentenced you or your

7   attorney thinks that the court has not properly followed the

8   law in sentencing you, you can generally appeal your sentence

9   to a higher court.  But by pleading guilty you will not, except

10  under limited circumstances, be able to challenge your judgment

11  of conviction by appeal or by collateral attack.  Do you

12  understand?

13          THE DEFENDANT:  Yes.

14          THE COURT:  We're going to talk about the Plea

15  Agreement in a little more detail but I want to note one piece

16  of the Plea Agreement which is Paragraph 4 which relates to

17  your right to appeal.  Paragraph 4, the first sentence says,

18  "The defendant agrees not to file an appeal or otherwise

19  challenge by petition pursuant to 28 USC Section 2255 or any

20  other provision the conviction or sentence in the event that

21  the court imposes a term of imprisonment of 71 months or

22  below."  So do you understand that limitation on your right to

23  appeal?

24          THE DEFENDANT:  Yes.

25          THE COURT:  I'm sorry?

21

1          THE DEFENDANT:  Yes.

2          THE COURT:  So are you willing to give up your right

3   to a trial and the other rights I have just discussed?

4          THE DEFENDANT:  Uh, yes.

5          THE COURT:  Are you equivocal about that or are you -

6   -

7          THE DEFENDANT:  No, I'm sure.

8          THE COURT:  You're sure.

9          THE DEFENDANT:  Yeah.

10          THE COURT:  All right.  So I'm going to go over the

11  Plea Agreement which I've marked as Court Exhibit 1 and I may

12  refer to it just as the agreement or as Court Exhibit 1 as we

13  go along.

14  (AT THIS TIME COURT EXHIBIT 1 MARKED)

15          THE COURT:  Have you seen this document, the Plea

16  Agreement?

17          THE DEFENDANT:  Yes.

18          THE COURT:  Have you read it?

19          THE DEFENDANT:  Yes.

20          THE COURT:  And have you reviewed it in its entirety

21  with your attorney?

22          THE DEFENDANT:  Yes, I did.

23          THE COURT:  The last page of the agreement, which is

24  Page 11, in the middle of the page it says I have read the

25  entire agreement and discussed it with my attorney.  I

22

1  understand all of its terms and I'm entering into it knowingly

2  and voluntarily.  Do you have a copy there?

3            THE DEFENDANT:  Yes.

4            THE COURT:  Do you see that sentence?

5            THE DEFENDANT:  Yes, I do.

6            THE COURT:  Is that a correct statement?

7            THE DEFENDANT:  Yes, it is.

8            THE COURT:  On the copy that I have up here, I'm

9  going to hold it up, right below that sentence is a signature.

10 Is that your signature?

11           THE DEFENDANT:  Defendant?  Yes.

12           THE COURT:  Right where it says Eric Lustig,

13 defendant.

14           THE DEFENDANT:  Yes.

15           THE COURT:  Is that your signature?

16           THE DEFENDANT:  It is.

17           THE COURT:  And below that it says approved by, and

18 typewritten is Mildred Whalen, counsel to defendant.  Ms.

19 Whalen, is that your signature?

20           MS. WHALEN:  Yes, it is.

21           THE COURT:  On the right-hand side, Mr. Kessler, is

22 that your signature, the first one?

23           MR. KESSLER:  Yes.  My signature is the first one and

24 then below my signature is the signature of Barrett Berger

25 who's a supervising assistant US Attorney in the office.

23

1          THE COURT:  We're going to go over the Plea Agreement

2   in some detail.  But Ms. Whalen, were all formal plea offers by

3   the Government conveyed to the defendant?

4          MS. WHALEN:  Yes.

5          THE COURT:  Mr. Lustig, does the written Plea

6   Agreement which is marked as Court Exhibit 1 accurately

7   represent the entire understanding or agreement that you have

8   with the Government?

9          THE DEFENDANT:  Yes.

10         THE COURT:  Has anyone made any promise or assurance

11  to you that's not in the Plea Agreement to persuade you to

12  accept the Plea Agreement?

13         THE DEFENDANT:  No.

14         THE COURT:  Has anyone threatened you in any way to

15  persuade you to accept the Plea Agreement?

16         THE DEFENDANT:  No.

17         THE COURT:  Do you understand the entire Plea

18  Agreement?

19         THE DEFENDANT:  I do.

20         THE COURT:  Ms. Whalen, have you read and reviewed

21  with your client the written Plea Agreement which is marked as

22  Court Exhibit 1?

23         MR. KESSLER:  Yes, I have.

24         THE COURT:  And does it reflect your understanding of

25  the entire agreement that your client has entered into with the

24

1    Government?

2              MS. WHALEN:  Yes, it does.

3              THE COURT:  I'm just going to interrupt for a second.

4                        [Pause in proceedings.]

5              THE COURT:  Okay.  Sorry about that.

6              Mr. Lustig, do you understand that if you fail to

7    comply with your agreement with the Government, the Government

8    will be released from its obligations but you will not be

9    released from your plea of guilty?

10             THE DEFENDANT:  Yes.

11             THE COURT:  We're going to go over the possible

12   consequences of the plea and if it's helpful to you, some of

13   this is written out in Paragraph 1 of Court Exhibit 1.

14             So it's my understanding that as part of this

15   agreement you're going to plead guilty to Count 2 of the

16   indictment.  The indictment is the document that we had talked

17   about earlier.  Count 2 charges a violation of a particular

18   federal statute which is referred to as 18 United States Code

19   Section 2252(a)(4)(B).  Is that correct?  That's the count to

20   which you intend to plead guilty?

21             THE DEFENDANT:  Yes, it is.

22             THE COURT:  So Count 2 carries the following

23   statutory penalties.  Maximum term of imprisonment of 20 years,

24   a minimum term of imprisonment of zero years.  Do you

25   understand that?

1          THE DEFENDANT:  Yes.

2          THE COURT:  It carries a minimum supervised release

3    term of five years and a maximum supervised release term of

4    life which would follow any term of imprisonment.  If a

5    condition of release is violated, you may be sentenced for up

6    to two years without credit for pre-release imprisonment or

7    time previously served on post release supervision.  Do you

8    understand that?

9          THE DEFENDANT:  Yes.

10          THE COURT:  While on supervised release, there may be

11    many restrictions placed on your liberty.  They may include,

12    among other things, travel limitations, requirements that you

13    regularly report to a probation officer, prohibition on

14    carrying guns and other limitations.  Do you understand that?

15          THE DEFENDANT:  Yeah, I do.

16          THE COURT:  If you commit any criminal offense under

17    particular laws Chapter 109(a), 110, or 117, or Title 18 of the

18    US Code Section 1201, or 1591 for which imprisonment for a term

19    longer than one year can be imposed, you shall be sentenced to

20    not less than five years and up to the maximum term of

21    imprisonment for the offense as set forth above in Paragraph 1A

22    which is the 20 years.  Do you understand that provision?

23          THE DEFENDANT:  Uh, yes.

24          THE COURT:  Again, are you equivocal about it or do

25    you understand it?

1            THE DEFENDANT:  No, I understand it.

2            THE COURT:  All right.  A maximum fine of up to

3    $250,000 may be imposed.  You may be subject to restitution

4    which is outlined in Paragraph 12 through 16 of the agreement.

5    Do you understand those provisions?

6            THE DEFENDANT:  Yes.

7            THE COURT:  We're look in particular at Paragraphs 12

8    through 16 right now.  So if you look at Page 7, there are

9    provisions with regard to restitution.  Have you read

10   Paragraphs 12 through 16?

11           THE DEFENDANT:  Yes, I did.

12           THE COURT:  Do you understand them?

13           THE DEFENDANT:  Yes, I do.

14           THE COURT:  Did you review them with your attorney?

15           THE DEFENDANT:  Yes, I did.

16           THE COURT:  All right.  And are you in agreement with

17   those provisions?

18           THE DEFENDANT:  Yes.

19           THE COURT:  Going back to Page 2, you will be charged

20   a $100 special assessment.  Do you understand that?

21           THE DEFENDANT:  Yes.

22           THE COURT:  Other penalties will include sex offender

23   registration pursuant to the Sex Offender Registration

24   Notification Act.  That requirement and punishment is described

25   in Paragraph 18 of the Plea Agreement which is the document

27

1  marked as Court Exhibit 1.  Do you understand that possible

2  penalty?

3             THE DEFENDANT:  Yes, I do.

4             THE COURT:  We're going to look at Paragraph 18 right

5  now.  If you could turn to Page 9 of your copy of the Plea

6  Agreement?  Have you read Paragraph 18?

7             THE DEFENDANT:  Yes, I did.

8             THE COURT:  Did you review it with your attorney?

9             THE DEFENDANT:  Yes.

10             THE COURT:  Do you understand the provision?

11             THE DEFENDANT:  Yes.

12             THE COURT:  Now going back to Page 2 again which has

13  a list of the possible penalties.  Additional possible penalty

14  is criminal forfeiture as set forth in Paragraph 6 through 12.

15  I'm sorry, 6 through 11 of the Plea Agreement which is marked

16  again as Court Exhibit 1.  You could turn to Paragraph 6 which

17  starts on Page 5 and goes through Paragraph 11 with regard to

18  restitution.  Have you read these paragraphs?

19             THE DEFENDANT:  I did.

20             THE COURT:  Do you understand them?

21             THE DEFENDANT:  Yes.

22             THE COURT:  Did you review them with your attorney?

23             THE DEFENDANT:  Yes, I did.

24             THE COURT:  To the extent they include

25  acknowledgments, do you acknowledge what's said in these

28

1    paragraphs?

2              THE DEFENDANT:  Yes.

3              THE COURT:  Let's just look at the rest of the Plea

4    Agreement.  What I went over was Paragraph 1.  If you look at

5    Paragraph 2 of the Plea Agreement which is marked as Court

6    Exhibit 1.  Have you read this paragraph?

7              THE DEFENDANT:  Yes, I did.

8              THE COURT:  Do you understand it?

9              THE DEFENDANT:  Yes, I do.

10             THE COURT:  I'm going to provide some more

11   information and we'll come back to Paragraph 2.  If you could

12   look at Paragraph 3.  Have you read that paragraph?

13             THE DEFENDANT:  Yes.

14             THE COURT:  Did you go over it with your attorney?

15             THE DEFENDANT:  Yes, I did.

16             THE COURT:  And do you understand it?

17             THE DEFENDANT:  Yes, I do.

18             THE COURT:  We'll also look at Paragraph 4.  I read

19   earlier the first sentence of Paragraph 4.  Have you read the

20   entire Paragraph 4?

21             THE DEFENDANT:  Yes, I did.

22             THE COURT:  And do you understand it?

23             THE DEFENDANT:  Yes.

24             THE COURT:  And did you have a sufficient opportunity

25   to review it with your attorney?

1           THE DEFENDANT:  I did.

2           THE COURT:  If you could also look at Paragraph 5.

3  Have you read that paragraph?

4           THE DEFENDANT:  Yeah, I read it and understand it.

5           THE COURT:  And did you have sufficient opportunity

6  to review it with your attorney?

7           THE DEFENDANT:  Yes.

8           THE COURT:  We've already gone over Paragraph 6

9  through 11.  Let's look at -- we went over 6 through 11 of this

10 agreement but then we went over 12 through 16.  So if you could

11 turn to Paragraph 17.  Have you read Paragraph 17?

12          THE DEFENDANT:  Okay.  I do understand, yes.

13          THE COURT:  And you read it?

14          THE DEFENDANT:  Yes.

15          THE COURT:  And did you have sufficient opportunity

16 to review it with your attorney?

17          THE DEFENDANT:  Yeah, I did.

18          THE COURT:  All right.  And then the final paragraph

19 that we didn't go over yet is Paragraph 19.  Have you read that

20 paragraph?

21          THE DEFENDANT:  Yes.

22          THE COURT:  Did you have sufficient opportunity to

23 review it with your attorney?

24          THE DEFENDANT:  Yes, I did.

25          THE COURT:  Do you understand it?

1          THE DEFENDANT:  Yes, I do.

2          THE COURT:  Let me ask counsel for the defendant, Ms.

3  Whalen, is your client a US citizen?

4          MS. WHALEN:  Yes, he is.

5          THE COURT:  I mention that, Mr. Lustig, because if

6  you were not a United States citizen then your plea might have

7  serious Immigration consequences.

8          So let's talk about sentencing.  The sentencing judge

9  does not have complete discretion to impose a sentence outside

10  of the statutory minimum and maximum sentences that are set

11  forth in the statute.  And we went over them in our review of

12  Paragraph 1 of the Plea Agreement.  Do you understand that?

13          THE DEFENDANT:  Yes.

14          THE COURT:  As a first step in the sentencing

15  process, the court must consider the advisory sentencing

16  guidelines that have been issued by the United States

17  Sentencing Commission in determining what is a reasonable

18  sentence in a criminal case.  As a second step, the judge or

19  the district court must consider whether there are any factors

20  present that would allow a sentencing judge to depart from

21  those advisory sentencing guidelines.  The judge may decide to

22  depart upwardly or downwardly.

23          In addition, the court must consider the factors that

24  are set forth in a particular federal statute which we refer to

25  as 18 USC Section 3553(a).  The judge must consider those

1    factors against all other facts and circumstances of your case.

2    In doing that, the judge may determine that a non-guideline

3    sentence may be appropriate.  The practical import of this

4    process is that until the date of sentencing when the district

5    court has had an opportunity to review the transcript of

6    today's proceeding and determine whether to accept your plea

7    and has received a presentence report about you and had an

8    opportunity to read that and heard from you, your lawyer and

9    the Government, you cannot know with certainty what the

10   guidelines will be or whether there will be grounds for the

11   district judge to depart from those guidelines.  You can also

12   not know whether the court will impose a non-guideline

13   sentence.  Do you understand?

14            THE DEFENDANT:  Oh, yes.

15            THE COURT:  Nonetheless, I asked the attorneys to

16   give their best estimate as to what the guidelines are likely

17   to say based upon the facts that are available to them at this

18   time.  I just remind you, Mr. Lustig, that you need to keep in

19   mind that this is a guess and the attorneys could be wrong.

20   For the Government, what's your estimate as to what the

21   sentencing guidelines may be?

22            MR. KESSLER:  Your Honor, the Government's estimate

23   is the same estimate in Paragraph 2 of the agreement we've been

24   discussing.  That is a base offense level of 18, three

25   enhancements of a total of nine points leading to a total

32

1    offense level of 27.  And then we would anticipate a three

2    point reduction for acceptance of responsibility leaving us

3    with an adjusted offense level of 24 under the assumption that

4    the defendant is in criminal history category one.  That would

5    be a guidelines range of 51 to 63 months.

6              THE COURT:  So let me just ask you based on the

7    calculation in the agreement that I have has the defendant

8    pleading guilty before October 2, 2015.

9              MR. KESSLER:  We'll waive that.  I'm sorry.

10             THE COURT:  Okay.  Why don't we note that on here.

11   Okay.  So would the agreement be today's date?

12             MR. KESSLER:  The agreement is dated as of today's

13   date.  To the extent it's a procedural necessity, the

14   Government will certainly move for that additional one point

15   reduction to be added.

16             THE COURT:  All right.  Would the Government agree

17   that that date of October 2nd could be changed to November 10th

18   which is today's date?

19             MR. KESSLER:  Absolutely.

20             THE COURT:  All right.

21             MR. KESSLER:  And just so the record is clear, Mr.

22   Lustig indicated his willingness to plead guilty before that

23   date of October 2nd.

24             THE COURT:  All right.  Krista, let me give you this.

25             So Mr. Lustig, with your attorney, if you could

1  review that paragraph and what's been proposed and if you're in

2  agreement with it, is that the date by which you would need to

3  plead guilty to get the benefit of what's described in that

4  agreement is going to be changed to today because it has a date

5  that's more than a month ago.  If you're in agreement, Ms.

6  Whalen, if you could initial it and Mr. Lustig, you should

7  initial that change.  And I'll ask Mr. Kessler on behalf of the

8  Government to initial the change.

9           Mr. Lustig, do you understand the estimate that the

10  Government just gave?

11           THE DEFENDANT:  I do.

12           THE COURT:  And with regard to the date change, I'm

13  just going to hold up the Please Agreement which is Court

14  Exhibit 1 and point at Paragraph 2 where the date October 2nd

15  was changed to November 10, 2015.  Is the EL noted there, is

16  that your initial?  Are those your initials?

17           THE DEFENDANT:  It is.

18           THE COURT:  And then right next to EL, Ms. Whalen, is

19  that your initial?

20           MS. WHALEN:  It is.

21           THE COURT:  And then right below that, Mr. Kessler,

22  for the Government?

23           MR. KESSLER:  Yes.

24           THE COURT:  Okay.  So Ms. Whalen, as to your estimate

25  as to what the guidelines will provide for Mr. Lustig?

1          MS. WHALEN:  Your Honor, I believe that the estimate

2 set forth in the Plea Agreement is technically correct.

3          THE COURT:  So Mr. Lustig, you understand that the

4 attorneys' estimates are not binding on the Government,

5 Probation, or the Court?

6          THE DEFENDANT:  I do understand.

7          THE COURT:  Do you understand that if their estimates

8 are wrong that will not be the basis for you to be permitted to

9 withdraw your plea of guilty?

10          THE DEFENDANT:  I do understand.

11          THE COURT:  And your ultimate sentence may -- do you

12 understand that your ultimate sentence may turn out to be

13 different from any estimate your attorney or the Government's

14 attorney may have given you?

15          THE DEFENDANT:  Yes, I understand.

16          THE COURT:  And you understand that it can turn out

17 because of other statutory sentencing factors the district

18 judge may impose a sentence that's even higher than the one

19 called for by the advisory sentencing guidelines?

20          THE DEFENDANT:  Yeah, I understand that.

21          THE COURT:  Do you understand that if that turns out

22 to be the case, you would not be permitted to withdraw your

23 guilty plea simply because no one could tell you in advance

24 what your sentence would be.  Do you understand that?

25          THE DEFENDANT:  Yeah, I understand that.

1          THE COURT:  Do you understand that if the district

2  judge accepts your plea of guilty to a felony offense you will

3  be adjudged guilty of a felony and that adjudication may result

4  in a deprivation of valuable civil rights.  Those rights

5  include the right to vote, hold public office, serve on a jury,

6  and possess a firearm.  Do you understand?

7          THE DEFENDANT:  Yeah, I understand.

8          THE COURT:  I've gone over many of the possible

9  consequences to you if your plea of guilty is accepted.  Do you

10  understand all these possible consequences?

11          THE DEFENDANT:  Yes.

12          THE COURT:  Did you have a sufficient opportunity to

13  consult with your attorney about them?

14          THE DEFENDANT:  Yes.

15          THE COURT:  Do you still wish to go ahead with your

16  proposed plea of guilty?

17          THE DEFENDANT:  I do.

18          THE COURT:  So are you pleading guilty voluntarily

19  and of your own free will?

20          THE DEFENDANT:  Yes.

21          THE COURT:  Has anyone threatened or forced you to

22  plead guilty?

23          THE DEFENDANT:  No.

24          THE COURT:  Other than the promises that are

25  contained in the written agreement that you have entered into

36

1    with the Government, which is the Plea Agreement which has been

2    marked as Court Exhibit 1, has anyone made any other promises

3    to you to induce you to plead guilty?

4              THE DEFENDANT:  No.

5              THE COURT:  Has anyone made any promise to you as to

6    what your final sentence may be?

7              THE DEFENDANT:  No.

8              THE COURT:  Are you pleading guilty of your own free

9    will because you are in fact guilty of Count 2 of the

10   indictment?

11             THE DEFENDANT:  Yes.

12             THE COURT:  Mr. Kessler, is the Government prepared

13   to prove at trial all of the elements of the counts in the

14   indictment against the defendant?

15             MR. KESSLER:  Yes.

16             THE COURT:  With regard to Count 2 which is the count

17   to which it's proposed that Mr. Lustig plead guilty, what are

18   the elements?

19             MR. KESSLER:  We previously provided a sheet listing

20   those elements to the court and to defense counsel.  Just to be

21   clear, this is 18 USC 2252(a)(4)(B), possession of child

22   pornography.  The elements are that the defendant did knowingly

23   and intentionally possess matter containing one or more visual

24   depictions which visual depictions had been mailed or shipped

25   or transported in and affecting interstate commerce and foreign

1    commerce by using a means in facility of interstate and foreign

2    commerce, or which were produced using materials which had been

3    mailed or shipped or transported by any means including by

4    computer.  The production of such visual depictions involved

5    the use of one or more minors engaging in sexually explicit

6    conduct and such visual depictions were of such conduct.

7         THE COURT:  Ms. Whalen, do you agree that those are

8    the elements of the charge possession of child pornography

9    which is Count 2 and that's the count to which it's proposed

10   that Mr. Lustig is going to plead guilty?

11        MS. WHALEN:  Yes, I do.

12        THE COURT:  All right.  For the Government, briefly,

13   what are the facts or evidence that the Government would offer

14   at trial to prove the defendant's guilt?

15        MR. KESSLER:  So a not exclusive list of the facts

16   and evidence the Government would use would include the images

17   of minors engaging in sexually explicit conduct located on the

18   defendant's computer that was seized from the apartment where

19   the defendant was staying on or about the dates listed in the -

20   - sorry.  Several months after the date listed in the

21   indictment when the search warrant was actually executed.  The

22   statements made by the defendant that were recorded by FBI

23   agents and the testimony of the FBI agents, the statements to

24   the effect of Mr. Lustig knowingly downloading images of minors

25   engaged in sexually explicit conduct.  And I believe that the

1  use of a computer to download the images from the internet and

2  then the storing of those images on a computer will satisfy the

3  sort of third element I've listed in the element sheet which is

4  that the visual depictions have been mailed or shipped or

5  transported in and affecting interstate commerce and so forth.

6          THE COURT:  Ms. Whalen, are you in agreement the

7  Government would be able to use that evidence to prove the

8  offense against your client at trial?

9          MS. WHALEN:  Yes.

10         THE COURT:  Ms. Whalen, do you know of any reason why

11  Mr. Lustig should not plead guilty at this time?

12         MS. WHALEN:  No, I don't.

13         THE COURT:  Are you aware of any viable legal defense

14  to the charges against him?

15         MS. WHALEN:  No, I'm not.

16         THE COURT:  Mr. Lustig, are you ready to plead?

17         THE DEFENDANT:  Yes, I am.

18         THE COURT:  Do you wish to have any additional time

19  to speak with your attorney?

20         THE DEFENDANT:  No, I guess not.  No.

21         THE COURT:  I can give you the time if you need it.

22         THE DEFENDANT:  No.

23         MS. WHALEN:  If you have a question?

24         THE DEFENDANT:  Actually, I have one.

25         THE COURT:  Okay.  So we're going to just turn off

1  the microphone so you'll hear some noise in the background, if

2  we can figure out how to do that on this.  Do you know how to

3  do that?

4                    [Pause in proceedings.]

5              THE DEFENDANT:  Thank you.

6              THE COURT:  Sir, did you have sufficient time to

7  consult with your attorney?

8              THE DEFENDANT:  Yes, I did.

9              THE COURT:  You don't need any more time, is that

10 correct?

11             THE DEFENDANT:  No, I'm good.  Thanks.

12             THE COURT:  So with regard to Count 2 of the

13 indictment which charges a violation of 18 USC Section

14 2252(a)(4)(B) which is possession of child pornography, how do

15 you plead; guilty or not guilty?

16             THE DEFENDANT:  Guilty.

17             THE COURT:  Mr. Lustig, at this time you need to tell

18 me what it is that you did such that you are in fact guilty of

19 that charge which is possession of child pornography.

20             THE DEFENDANT:  On November 14, 2014 I knowingly

21 possessed pictures of children showing their genitals on my

22 computer.  My computer was located in Brooklyn, New York.  I

23 had received these pictures over the internet.

24             MS. WHALEN:  Judge, I can perhaps clarify.

25             THE COURT:  Yes.

1      MS. WHALEN:  The definition of sexually explicit

2 conduct --

3      THE COURT:  That's exactly --

4      MS. WHALEN:  Yeah.  It includes the lascivious

5 display of genitals.  My understanding in my review of the

6 discovery in the case was that it was atypical in that there

7 was no -- there were no depictions of sexual intercourse, but

8 there were depictions of children lasciviously displaying their

9 genitals.

10      THE COURT:  So Mr. Lustig, do you agree that the

11 materials that you just described as being on your computer

12 included children with a lascivious display of their genitals?

13      THE DEFENDANT:  Yeah, they were showing their

14 genitals, yes.

15      THE COURT:  Part of that answer is really the

16 question of whether the display was a lascivious display.

17      MS. WHALEN:  I can resolve that.

18                [Pause in proceedings.]

19      THE COURT:  Okay.  I'm sorry.  Hold on.  It's a new

20 microphone system so we're still trying to master it.

21      So as to the element that relate -- or as to the

22 facts that relate to the element of sexually explicit conduct -

23 -

24      THE DEFENDANT:  They were posing with showing their

25 genitals similar to like depictions you would see in Playboy.

41

1          THE COURT:  When you say they, you mean they children

2    who were shown in the pictures that were on your computer?

3          THE DEFENDANT:  Yes.

4          THE COURT:  All right.  For the Government, is that

5    allocution sufficient?

6          MR. KESSLER:  Well, a couple of things, Your Honor.

7    First of all, I believe Mr. Lustig stated that he engaged in

8    the conduct he described in November of 2014.  The indictment

9    charges that the conduct occurred in October.  I believe the

10   defendant just misspoke because I believe his --

11         MS. WHALEN:  No --

12         THE COURT:  No, possession is --

13         MR. KESSLER:  I'm sorry.  My mistake.

14         THE COURT:  The first one was October, but this is a

15   plea to the second count.

16         MR. KESSLER:  I withdraw that.  The second thing is

17   there are two additional facts which the defendant did not

18   allocute to, but I believe does not dispute, so I will just

19   state them and then we can see whether or not I am in fact

20   correct.

21         The first is that the images were of prepubescent

22   minors, and the second is that the total offense involved 600

23   or more images.  I understand that the defense may have legal

24   arguments about whether or not -- or how those facts affect the

25   guidelines calculations or sentencing and I understand we'll

1    save that for another day.  But my understanding is that the

2    actual facts that I've just stated are not disputed.

3              MS. WHALEN:  They're not, Your Honor.  They are

4    sentencing enhancements.  The maximum term of imprisonment is

5    increased from ten to 20 years if there are prepubescent minors

6    involved and the fact that there are 600 or more images is a

7    fact for the sentencing guidelines which I believe is set forth

8    in the Plea Agreement.  We don't dispute those two factual

9    issues.  My only statement would be that in light of <u>United</u>

10   <u>States v. Dorvee</u> and the Sentencing Commission's report on

11   sexual offenses we will be arguing that while that technical

12   guideline applies, that's not the appropriate sentence for Mr.

13   Lustig.

14             THE COURT:  So reading the elements, I don't think at

15   this time he needs to allocute to those but the two facts --

16   you would like a clear record I understand for the sentencing

17   purposes.

18             MR. KESSLER:  Or if we need a Fatico hearing later.

19             THE COURT:  Right.  So what's your position?

20             MS. WHALEN:  I guess for sentencing purposes, yeah,

21   we don't dispute that the maximum is increased because of the

22   fact that there were prepubescent minors on the computer.  And

23   again, with the 600 images, we don't dispute that there

24   factually were 600 images or more --

25             THE COURT:  Or more, correct.

43

1          MS. WHALEN:  -- on Mr. Lustig's computer.

2          MR. KESSLER:  That completes my --

3          THE COURT:  All right.  So the allocution as to Count
4  2, possession of child pornography, that Mr. Lustig gave, is
5  that satisfactory with the Government?

6          MR. KESSLER:  Yes, Your Honor.

7          THE COURT:  Ms. Whalen, anything else you'd like your
8  client to add to the record?

9          MS. WHALEN:  No, Your Honor.

10          THE COURT:  So we have a sentencing date which is
11  February 23, 2016 at 10 a.m. before the district judge.

12          Ms. Whalen, for the preparation of the presentence
13  report would you like to be present?

14          MS. WHALEN:  Yes, and we actually have scheduled it
15  for after the guilty plea today.

16          THE COURT:  Well that's very efficient.  With regard
17  to the Plea Agreement, I'm going to give the original back to
18  you and let me just then -- anything else we need to cover?
19  And then I'll just put my recommendation on the record.

20          MR. KESSLER:  The only other thing, Your Honor, would
21  be there's still Count 1 of the indictment.  It is the
22  Government's intention to dismiss that count upon the
23  acceptance of the plea by the district judge.  But for now we'd
24  ask that time be excluded with respect, to the extent it's
25  necessary, with respect to that count given the ongoing plea

44

1    discussions and the plea entered in Count 2 between now and the

2    date of sentencing.

3              MS. WHALEN:  To the extent that's necessary, we have

4    no objection.

5              THE COURT:  Okay.  So the time between today and

6    February 23rd is excluded to the extent that this is the first

7    time I've gotten this request.  Did I miss something?

8              MR. KESSLER:  We spent a fair amount of time thinking

9    about the Speedy Trial Act recently and it's not clear to me

10   that a guilty plea with respect to one count in an indictment

11   affects the clock for other counts of the same indictment.  So

12   better safe than sorry is my view.  But we can also make the

13   request of the district judge if the court would prefer.

14             THE COURT:  No.  Let me just -- I saw the time

15   excluded but let me just make sure.  Let me just finish the

16   plea piece of this --

17             MR. KESSLER:  Sure.

18             THE COURT:  -- so the record is clear and then we'll

19   talk about that.

20             So just so the record is clear, based on information

21   given to me here today and the documents that were provided to

22   me, I find that the defendant, Mr. Lustig, is fully competent

23   and capable of entering an informed plea, that he's acting

24   voluntarily, that he's aware of the nature of the charges

25   against him, that he understands his rights, that he

45

understands the consequences of his plea and there is a factual

basis for the plea to Count 2 of the indictment which is the

possession of child pornography and that factual basis provided

in the record contains an independent basis in fact as to each

of the essential elements of the offense.  So I therefore

recommend that the district judge, Judge Weinstein, accept the

plea of guilty to Count 2 of the indictment.

           And then what we were talking about was the Speedy

Trial Act and Mr. Lustig, it's a technical issue which I

suppose is not completely developed in this circuit, so you may

have previously been informed of this but just so the record is

clear, with regard to Count 1 which technically still remains

open and hasn't yet been dismissed because as I said when we

started this process what we're doing is I was hearing your

plea and during that process I explained to you your rights and

how the sentencing would work, but it's Judge Weinstein who

decides whether to accept your plea, and if he does, to

sentence you.  So the issue of the dismissal of Count 1 will

also be presented to Judge Weinstein.  So do you understand how

there's a bit of gap in time between now and you've provided

your plea to me and your sentencing date which is February 23rd

of next year before Judge Weinstein and --

           THE DEFENDANT:  I would just like to review that for

a second.

           THE COURT:  I know it's a little complicated.  We're

46

1  sort of mixing things.  We've gone from the plea back to the

2  Speedy Trial Act, so yes, let Ms. Whalen talk to you about it

3  and then come back and I'll explain a little bit more.

4                    [Pause in proceedings.]

5           THE COURT:  All right.  So I'm going to try to state

6  it clearly.  If it lines up with what Ms. Whalen said, then

7  we're good to go here which is you've been previously told

8  about the Speedy Trial Act.  The Speedy Trial Act requires that

9  you go to trial within 70 days of the date of the indictment

10  but there can be periods of excludable delay or time that

11  doesn't count towards that speedy trial clock.  If the

12  Government failed to bring you to trial in time within the 70

13  day period that didn't count those periods of excludable delay,

14  then you could bring a motion to dismiss the charge against

15  you.  And what I'm going to ask after I get a little more of an

16  explanation is whether you are in agreement with the

17  application here which is to exclude the time between today

18  which is November 10, 2015 and your sentencing date which is

19  presently February 23, 2016.  The reason this comes up here

20  even though we've gone through the plea proceeding with regard

21  to Count 2 in the indictment is because the indictment had two

22  counts against you, Count 1 and Count 2, and as part of this

23  plea process what has been proposed is if your plea is accepted

24  by the district judge, which we won't know until you get to

25  your sentencing date, then the Government will move to dismiss

1    Count 1 of the indictment.  But technically until you get to

2    the sentencing date and the plea process is concluded, there's

3    no determination as to Count 1.  So that's why you've heard

4    this Speedy Trial Act application for an order of excludable

5    delay before and that's why it's coming up here again.  So it's

6    a little bit of apples and oranges, plea and the Speedy Trial

7    Act.  But do you understand the speedy trial --

8               THE DEFENDANT:  Yes, now I understand.

9               THE COURT:  All right.  Did you have a sufficient

10   opportunity to review it with Ms. Whalen?

11              THE DEFENDANT:  Yes.

12              THE COURT:  And are you in agreement with the

13   application?

14              THE DEFENDANT:  Yes.

15              THE COURT:  Has anyone forced you to agree to this

16   application?

17              THE DEFENDANT:  No.

18              THE COURT:  Has anyone made any promise is to you --

19              THE DEFENDANT:  No.

20              THE COURT:  -- to agree to the application?

21              THE DEFENDANT:  Nobody made any promises.

22              THE COURT:  Okay.  So based on what's been said here

23   today by counsel and by the defendant, I find that the entry of

24   an order of excludable delay from today, November 10th to

25   February 23, 2016 is in the defendant's interest and the

48

1   People's interest and the interest of justice, so the time is

2   excluded.

3           I think we've covered our bases.  The plea, the

4   Speedy Trial Act, sentencing date.  Anything else?

5           MS. WHALEN:  No, Your Honor.  Thank you.

6           MR. KESSLER:  No, Your Honor.

7           THE COURT:  Mr. Lustig, stay in touch with your

8   attorney and follow through on this preparation of the

9   presentence report.

10          THE DEFENDANT:  Thank you, Your Honor.

11          THE COURT:  All right.  Take care.  Good luck.

12  (Proceedings concluded at 12:58 p.m.)

13                       *  *  *  *  *  *

14

15

16

17

18

19

20

21

22

23

24

25

49

1      I certify that the foregoing is a court transcript from an

2  electronic sound recording of the proceedings in the above-

3  entitled matter.

4

5      _____

6                                    Mary Greco

7  Dated:   December 15, 2015

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25